1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MICHELLE R. KIRBY,                    )      NO. SA CV 18-497-E
                                          )
12                    Plaintiff,          )
                                          )
13       v.                               )      **MEMORANDUM OPINION**
                                          )
14  NANCY A. BERRYHILL, DEPUTY            )
    COMMISSIONER FOR OPERATIONS,          )
15  SOCIAL SECURITY,                      )
                                          )
16                    Defendant.          )
    _____)

17

18                          **PROCEEDINGS**

19

20       Plaintiff filed a complaint on March 26, 2018, seeking review of

21  the Commissioner's denial of benefits.  The parties filed a consent to

22  proceed before a United States Magistrate Judge on April 25, 2018.

23  Plaintiff filed a motion for summary judgment on August 11, 2018.

24  Defendant filed a motion for summary judgment on September 11, 2018.

25  The Court has taken both motions under submission without oral

26  argument.  See L.R. 7-15; "Order," filed April 2, 2018.

27  ///

28  ///

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff claims disability since August 21, 2002, based on a combination of alleged exertional and non-exertional impairments (Administrative Record ("A.R.") 53-54, 202-03, 251, 275-76, 350, 1681). The Court twice previously remanded Plaintiff's claim for further administrative proceedings. See A.R. 1484-92 (Memorandum Opinion and Order of Remand and Judgment filed November 1, 2012, in Kirby v. Astrue, SA CV 12-621-E); A.R. 2116-41 (Memorandum Opinion and Order of Remand and Judgment filed July 31, 2015, in Kirby v. Colvin, SA CV 14-1977-E).

Following the most recent remand, a new Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff, a medical expert and a vocational expert (A.R. 1974-86, 1996-2031). The ALJ found Plaintiff not disabled from the date of her application (A.R. 1986).[1] In so doing, the ALJ relied on the vocational expert's testimony that a person with Plaintiff's residual functional capacity could perform other work which "exists in significant numbers in the national economy" (A.R. 1977, 1979, 1985-86). The ALJ found this testimony to be consistent with the Dictionary of Occupational Titles ("DOT") (A.R. 1985).

///

///

_____

[1]    Plaintiff "concedes to the reasonableness of the ALJ['s] assessment of the medical issues in this case including the listings and residual functional capacity" (Plaintiff's Motion, p. 5).

1    At the outset of the vocational expert's testimony, the ALJ had

2  directed the expert to testify according to the DOT, to explain any

3  testimony not in accordance with the DOT, and to state the basis for

4  the expert's testimony (A.R. 2022-23).  The vocational expert then

5  testified that a person with Plaintiff's residual functional capacity

6  would be capable of performing light, unskilled entry level work as an

7  assembler of small products (DOT 706.684-022), having 152,000 jobs

8  nationally, and electronics worker (DOT 726.687-010), having 32,900

9  jobs nationally (A.R. 2024-25).  Plaintiff's counsel questioned the

10 vocational expert concerning the bases for the numbers of jobs

11 specified, but did not object to the expert's testimony concerning the

12 numbers of jobs.  See A.R. 2029-30.[2]

13

14      [2]    Counsel asked:

15      Q.    [B]oth of these occupations are in a larger group of
              DOT codes.  There's about 1,590 DOT codes.
16

17      A.    Okay.  Agreed, generally.

18      Q.    And there's 405 light unskilled DOT codes in that
              group.
19

20      A.    Yes.

21      Q.    And your primary source of numbers is the U.S.
              Publishing?
22

23      A.    And the OccuBrowse Plus, which uses the OES, also.

24      Q.    . . . I think you . . . agree with me that U.S.
              Publishing's occupational quarterly two [sic], uses
25            frank aggregation that takes census code numbers and
              divide[s] by the number of DOT codes and subdivide –
26            and spread those out, based on whether they're light,
              sedentary, medium, heavy, skilled, semi-skilled,
27            unskilled.

28
                                              (continued...)

1    After the hearing, Plaintiff's counsel submitted "rebuttal

2 evidence" (A.R. 2322-43).  Plaintiff's counsel then argued that the

3 expert had relied on the Occupational Employment Quarterly ("OEQ") for

4 job numbers, a source which assertedly does not correlate with the

5 Occupational Outlook Handbook ("OOH").  See A.R. 2322-43 (also arguing

6 that an ALJ should never rely on vocational expert testimony based on

7 the OEQ).  The ALJ overruled counsel's objections because counsel had

8 failed to object at the time of the hearing (A.R. 1975).

9

10    Plaintiff's counsel thereafter filed "exceptions" with the

11 Appeals Council, submitting additional evidence and complaining of the

12 ALJ's reliance on the vocational expert's testimony.  See A.R. 2245-

13 77.  The Appeals Council considered the exceptions and the additional

14 evidence, but found no basis to assume jurisdiction (A.R. 1964-69).

15 The Appeals Council observed:

16

17    The vocational expert based his testimony on the [DOT] and

18    explained any deviations as based on his experience. . . .

19    [V]ocational experts are recognized as experts and as long

20    as their testimony is consistent with the DOT and its

21    companion publications, an [ALJ] may properly rely on their

22    testimony.

23

_____

24    ²(...continued)
     A.    Correct.
25

26    Q.    And they just use frank aggregation.

27    A.    That's correct.

28
(A.R. 2029-30).

4

1   (A.R. 1964-65).

2

3                         **STANDARD OF REVIEW**

4

5      Under 42 U.S.C. section 405(g), this Court reviews the

6 Administration's decision to determine if: (1) the Administration's

7 findings are supported by substantial evidence; and (2) the

8 Administration used correct legal standards. See Carmickle v.

9 Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

10 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner,

11 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such

12 relevant evidence as a reasonable mind might accept as adequate to

13 support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

14 (1971) (citation and quotations omitted); see also Widmark v.

15 Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

16

17      If the evidence can support either outcome, the court may

18      not substitute its judgment for that of the ALJ. But the

19      Commissioner's decision cannot be affirmed simply by

20      isolating a specific quantum of supporting evidence.

21      Rather, a court must consider the record as a whole,

22      weighing both evidence that supports and evidence that

23      detracts from the [administrative] conclusion.

24

25 Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

26 quotations omitted).

27 ///

28 ///

1  Where, as here, the Appeals Council considered additional

2  evidence but denied review, the additional evidence becomes part of

3  the record for purposes of the Court's analysis.  See Brewes v.

4  Commissioner, 682 F.3d at 1163 ("[W]hen the Appeals Council considers

5  new evidence in deciding whether to review a decision of the ALJ, that

6  evidence becomes part of the administrative record, which the district

7  court must consider when reviewing the Commissioner's final decision

8  for substantial evidence"; expressly adopting Ramirez v. Shalala, 8

9  F.3d 1449, 1452 (9th Cir. 1993)); Taylor v. Commissioner, 659 F.3d

10  1228, 1232 (2011) (courts may consider evidence presented for the

11  first time to the Appeals Council "to determine whether, in light of

12  the record as a whole, the ALJ's decision was supported by substantial

13  evidence and was free of legal error"); Penny v. Sullivan, 2 F.3d 953,

14  957 n.7 (9th Cir. 1993) ("the Appeals Council considered this

15  information and it became part of the record we are required to review

16  as a whole"); see generally 20 C.F.R. §§ 404.970(b), 416.1470(b).

17

18                              **DISCUSSION**

19

20  After consideration of the record as a whole, Defendant's motion

21  is granted and Plaintiff's motion is denied.  The Administration's

22  findings are supported by substantial evidence and are free from

23  material[3] legal error.

24  ///

25

26  ───────────────

27  [3]  The harmless error rule applies to the review of
administrative decisions regarding disability.  See Garcia v.
Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v.

28  Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

1     As indicated above, the vocational expert testified that a person

2   having Plaintiff's residual functional capacity can perform particular

3   jobs existing in significant numbers in the national economy (A.R.

4   2024-25).  "[A]t least in the absence of any contrary evidence, a

5   [vocational expert's] testimony is one type of job information that is

6   regarded as inherently reliable. . . ."  Buck v. Berryhill, 869 F.3d

7   1040, 1051 (9th Cir. 2017); see Bayliss v. Barnhart, 427 F.3d 1211,

8   1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise

9   provides the necessary foundation for his or her testimony.  Thus, no

10  additional foundation is required").

11

12    An ALJ properly may rely on vocational expert testimony

13  identifying jobs a claimant can perform.  Johnson v. Shalala, 60 F.3d

14  1428, 1435-36 (9th Cir. 1995).  "An ALJ may [also] rely on a

15  vocational expert's testimony concerning the number of relevant jobs

16  in the national economy, and need not inquire sua sponte into the

17  foundation for the expert's opinion."  Shaibi v. Berryhill, 883 F.3d

18  1102, 1109-10 (9th Cir. 2017) ("Shaibi") (citations omitted).  Such

19  testimony can furnish substantial evidence to support an ALJ's

20  determination that a claimant is not disa bled.  See Barker v.

21  Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989).

22

23    "[A]n ALJ is required to investigate and resolve any apparent

24  conflict between the [vocational expert's] testimony and the DOT."

25  Shaibi, 883 F.3d at 1109.  However, an ALJ is under no obligation to

26  consult the OOH or to attempt to reconcile conflicts between the OOH

27  and vocational expert testimony.  Id. ("we can find no case,

28  regulation, or statute suggesting that an ALJ must sua sponte take

administrative notice of economic data in the . . . OOH"); <u>see also</u>

<u>Holden v. Berryhill</u>, 722 Fed. App'x 675, 676 (9th Cir. 2018) (ALJ did

not err in relying on vocational expert testimony without consulting

the OOH to determine whether the expert's testimony was in conflict).

The  Ninth Circuit explained:


    The DOT . . . and OOH are [] listed in 20 C.F.R. §

    404.1566(d) as [examples of] data sources of which the

    Social Security Administration "will take administrative

    notice."  It does not follow that an ALJ must in every case

    reconcile conflicts <u>sua sponte</u> between . . . those data

    sources and the [vocational expert's] testimony.  That

    requirement was established in SSR 00-4p, a Social Security

    Ruling, only for the DOT and an associated document [the

    Selected Characteristics of Occupations defined in the

    Revised DOT ("SCO")].


<u>Shaibi</u>, 883 F.3d at 1109 n.6; <u>see also</u> SSR 004-p at *1; <u>Wagner v.</u>

<u>Berryhill</u>, 2018 WL 3956485, at *6 (C.D. Cal. Aug. 14, 2018) ("The ALJ

had no obligation to address the VE's deviation from other sources

such as O*NET or OOH"); <u>Hocking v. Berryhill</u>, 2017 WL 6541858, at *4

(C.D. Cal. Dec. 21, 2017) ("Contrary to Plaintiff's argument, an ALJ

simply has no independent obligation to investigate or resolve

conflicts with the OOH, or any resource other than the DOT (and its

companion, the SCO)"); <u>Markell v. Berryhill</u>, 2017 WL 6316825, at *11

(N.D. Cal. Dec. 11, 2017) ("As with the DOT, the Commissioner takes

administrative notice of the OOH.  20 C.F.R. §416.966(d)(5).  But the

OOH is not binding; rather, the regulations simply identify the OOH as

an example of materials the Commissioner may consider") (citations and quotations omitted); <u>Paris v. Berryhill</u>, 2017 WL 4181093, at *3-4 (E.D. Cal. Sept. 20, 2017) (<u>Shaibi</u> held that the OOH does not stand on the "same footing" as the DOT); <u>Meza v. Berryhill</u>, 2017 WL 3298461, at *8 (C.D. Cal. Aug. 2, 2017) (same); <u>Walker v. Berryhill</u>, 2017 WL 1097171, at *4 (C.D. Cal. March 23, 2017) (ALJ has no obligation to inquire into alleged conflicts between the OOH and vocational expert testimony); <u>see also</u> <u>Poe v. Commissioner</u>, 342 Fed. App'x 149, 158 (6th Cir. Aug. 18, 2009) ("Social Security ruling (SSR) 00-4p only requires the ALJ to elicit a reasonable explanation when there is conflict between the vocational expert and the DOT. . . .  The ruling does not require that the ALJ attempt to address or resolve conflicts between the testimony of a vocational expert and the [OOH]").

Accordingly, to the extent Plaintiff argues here, as he did before the Administration, that there exists a conflict between the vocational expert's testimony and the OOH, the ALJ properly could rely on the vocational expert's testimony without further inquiry or explanation.  <u>See, e.g.</u>, <u>McCloud v. Berryhill</u>, 2018 WL 987222, at *5 (C.D. Cal. Feb. 28, 2018) (vocational expert's testimony constitutes "substantial evidence" even when the testimony conflicts with information in the OOH); <u>accord</u> <u>Hernandez v. Berryhill</u>, 2018 WL 2090402, at *6 (C.D. Cal. April 30, 2018); <u>Philbrook v. Berryhill</u>, 2018 WL 565262, at *1 (C.D. Cal. Jan. 24, 2018); <u>see generally</u> <u>Treichler v. Commissioner</u>, 775 F.3d 1090, 1098 (9th Cir. 2014) (the court "leaves it to the ALJ" to resolve conflicts and ambiguities in the evidence); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (court must uphold the Administrative decision when the evidence

1 "is susceptible to more than one rational interpretation").[4]

2

3    Plaintiff also argues that the vocational expert's testimony – in

4 at least partial reliance on the OEQ – "violates agency policy by

5 containing an unidentified and apparent conflict with the DOT." See

6 Plaintiff's Motion, pp. 7-11 (citing, Chavez v. Berryhill, 895 F.3d

7 962 (7th Cir. 2018) (discussing various methodologies vocational

8 experts use for estimation of job numbers (e.g., consulting the

9 Department of Labor's compilation of Occupational Employment

10 Statistics (as the vocational expert in Plaintiff's case apparently

11 did, along with other sources, see A.R. 2030))).  Plaintiff's counsel

12 has provided his own lay assessment of DOT occupation and industry

13 designations in comparison to OOH employment projections and those

14 from Job Browser Pro.  See Plaintiff's Motion, pp. 5-7, 10-11.

15 Therefrom, counsel argues that the vocational expert's numbers are

16

17 _____

     [4]    Furthermore, the Court discerns no "obvious or
18 apparent" conflict between the vocational expert's testimony and
   the information in the OOH.  For a difference between a
19 vocational expert's testimony and information in the DOT "to be
   fairly characterized as a conflict, it must be obvious or
20 apparent."  Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir.
   2016).  If, contrary to Shaibi, the OOH were on equal footing
21 with the DOT, the same requirement of an "obvious or apparent"
   conflict presumably would apply.  In Plaintiff's case, there is
22 no "obvious or apparent" conflict between the vocational expert's
   testimony concerning the number of jobs existing in the national
23 economy for the occupations the expert identified and the job
   distribution information in the OOH which "requires information
24 and inferences not contained in the [OOH itself]."  See Shaibi,
   883 F.3d at 1109 n.6; see also A.R. 2246-48 (Plaintiff's counsel
25 acknowledging that "[w]ork identified in the OOH represent [sic]
   summary data for which employment projections are prepared but
26 detailed occupational information is not developed," and arguing
   his own lay inferences from OOH employment projections to reach
27 estimates of available jobs).

28

inflated and somehow conflict with the DOT's "narrative discussions."
Id. Plaintiff's argument fails for two independent reasons.


    First, as the Chavez court observed, the DOT "describes only job
duties and requirements, without also reporting an estimate of how
many of those positions exist in the national economy."  Chavez v.
Berryhill, 895 F.3d at 965.  So, vocational experts must consult
sources beyond the DOT to estimate job numbers.  Id.  The Court
discerns no obvious or apparent conflict between the vocational
expert's testimony and the DOT.  See Gutierrez v. Colvin, 844 F.3d at
808; compare Farias v. Colvin, 519 Fed. App'x 439, 440 (9th Cir. 2013)
(discerning apparent conflict between vocational expert testimony and
DOT where expert testified that a person with the claimant's
characteristics could perform one job, but erroneously relied on
employment data for another job to estimate the number of available
jobs).


    Second, counsel's lay assessment of the data derived from the OOH
and Job Browser Pro does not undermine the reliability of the
vocational expert's testimony.  Counsel makes two specific comparisons
to suggest that the vocational expert's estimated numbers are
inflated.  Counsel argues that the two occupations the expert
identified (assembler of small products and electronics worker) fall
within a broad category of "production worker" jobs comprising 1590
different DOT occupation codes.  The OOH estimates that there are
236,200 total "production worker" jobs.  "Assuming the OOH and its
foundational [Employment Projections] are reliable sources of
published governmental data," counsel argues that the vocational

expert's estimation that there are as many as 152,000 small products

assembler jobs and 32,900 electronics worker jobs is inflated.  <u>See</u>

Plaintiff's Motion, pp. 5-7, 12-13.  Counsel also cites to Job Browser

Pro estimates of only 799 nationwide jobs for "production assembler,"

and 903 nationwide jobs for "small products assembler."  <u>See</u>

Plaintiff's Motion, p. 7.  Counsel has not offered any expert opinion

interpreting data from these sources, and the significance of the

information reflected in the various excerpts counsel has provided is

unproven.  Courts considering arguments similar to those counsel now

makes have found that such lay assessment of raw data cannot rebut a

vocational expert's opinion.  <u>See, e.g.</u>, <u>Reguero v. Berryhill</u>, 2018 WL

1804678, at *5-6 (E.D. Cal. Apr. 13, 2018) (ALJ was entitled to rely

on vocational expert's estimation of job numbers and appropriately

resolved any ambiguity in the expert's testimony; the claimant argued

unsuccessfully that expert's job estimates for three identified jobs

were "aggregate" and therefore should apply to the entire category of

DOT occupations in which the three jobs fell); <u>Munroe v. Colvin</u>, 2014

WL 6660369, at *5, 9-10 (N.D. Cal. Nov. 24, 2014) (rejecting argument

that vocational expert's estimated 500,000 garment sorter jobs should

have been reduced to only 650 jobs, representing a subset of jobs

within a larger category of "production worker" occupations; court

observed that the plaintiff was not a vocational expert and there was

no indication she was qualified to assess the data); <u>cf.</u> <u>Vo v. Colvin</u>,

2015 WL 1383138, at *4-5 (C.D. Cal. Mar. 24, 2015) (finding error in

vocational expert's analysis where the expert testified that the

claimant would be able to perform all or roughly all of the jobs

available in the larger category of occupations to which the

identified occupations belonged, and where the jobs identified were

highly specialized, e.g., wooden dowel inspector and perfume bottle atomizer assembler); see also Colbert v. Berryhill, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. § 416.966(d), and the data therefrom served only to show that evidence can be interpreted in different ways); Cardone v. Colvin, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.") (internal footnote omitted); Merryflorian v. Astrue, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (collecting cases that "uniformly rejected" arguments that Job Browser Pro data undermined vocational experts' testimony).

   The vocational expert was entitled to rely on his professional expertise to determine the number of available jobs. See Rincon v. Colvin, 636 Fed. App'x 963, 964 (9th Cir. 2016). The ALJ was entitled to rely on the vocational expert's testimony concerning the number of available jobs as substantial evidence to support the ALJ's disability determination. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJs may use vocational experts to determine occupational issues including number of relevant jobs); see also Edginton v. Colvin, 625 Fed. App'x 334, 335 (9th Cir. 2015) (same); 20 C.F.R. § 404.1566(e). Plaintiff's evidence arguably suggesting an alternative number of available jobs does not warrant remand. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is

susceptible to more than one rational interpretation, one of which

supports the ALJ's decision, the ALJ's conclusion must be upheld.");

see also Gardner v. Colvin, 2013 WL 781984, at *3 (C.D. Cal. Mar. 1,

2013) (finding no basis for remand where claimant presented evidence

sufficient to support an alternative finding regarding the number of

relevant jobs available in the economy).[5]

---

[5] A survey of recent cases shows that vocational experts' estimates of the numbers of jobs nationally range from 25,000 to 1,600,000 (for assembler of small products), and 10,000 to 311,000 (for electronics worker). See, e.g., Jeffries v. Berryhill, 2018 WL 2122888, at *8 (D. S.C. Apr. 13, 2018), adopted, 2018 WL 2118028 (D. S.C. May 8, 2018) (218,000 small products assembler jobs nationally); Moore v. Berryhill, 2018 WL 1323127, at *8 (W.D. Ky. Mar. 14, 2018) (324,000 small products assembler jobs nationally); Trujillo v. Berryhill, 2018 WL 1136902, at *6 (D. N.M. Mar. 2, 2018) (300,000 small products assembler jobs nationally); Sundown v. Colvin, 2018 WL 1081014, at *2 (W.D.N.Y. Feb. 28, 2018) (368,669 small products assembler jobs nationally); James v. Berryhill, 2017 WL 5713399, at *4 (N.D. Tex. Nov. 1, 2017), adopted, 2017 WL 5691166 (N.D. Tex. Nov. 27, 2017) (116,533 small products assembler jobs nationally); Vermeer v. Berryhill, 2017 WL 3494227, at *2 (W.D. Ark. Aug. 14, 2017) (500,000 small products assembler jobs nationally); Duran v. Commissioner, 2017 WL 1348948, at *14 (E.D. Cal. Apr. 7, 2017), aff'd, 725 Fed. App'x 577 (9th Cir. 2018) (96,000 small products assembler jobs nationally); Diesta v. Colvin, 2016 WL 6778216, at *8 (D. Haw. Nov. 15, 2016) (1,600,000 small products assembler jobs nationally); Castillo v. Commissioner, 2016 WL 54387, at *1 (E.D. Cal. Jan. 5, 2016) (78,500 small products assembler jobs nationally); Hann v. Colvin, 2014 WL 1382063, at *13 (N.D. Cal. Mar. 28, 2014) (25,000 small products assembler jobs nationally); Bell v. Colvin, 2014 WL 324756, at *6 (N.D. Cal. Jan. 29, 2014) (100,000 small products assembler jobs nationally); Monroe v. Astrue, 2013 WL 12100709, at *4 (S.D. Cal. Apr. 16, 2013) (307,000 small products assembler jobs nationally); see also Harris v. Commissioner, 2018 WL 3154623, at *2 (M.D. Fla. June 28, 2018) ("Harris") (10,000 electronics worker jobs nationally); Sutton v. Berryhill, 2017 WL 6568183, at *8 (N.D. Ohio Dec. 8, 2017), adopted, 2017 WL 6558165 (N.D. Ohio Dec. 22, 2017) (240,000 electronics worker jobs nationally); Eddie v. Berryhill, 2017 WL 4002147, at *6 (E.D. N.C. Aug. 24, 2017), adopted, 2017 WL 3995813 (E.D. N.C.

(continued...)

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: October 10, 2018.


                                    /s/
                              _____
                              CHARLES F. EICK
                              UNITED STATES MAGISTRATE JUDGE

---

[5](...continued)
Sept. 11, 2017) (39,000 electronics worker jobs nationally); Flanagan v. Commissioner, 2017 WL 9478418, at *5 (N.D. Ohio May 19, 2017), adopted, 2017 WL 3097519 (N.D. Ohio July 21, 2017) (240,000 electronics worker jobs nationally); Godfrey v. Colvin, 2016 WL 335338, at *8 (D. S.C. Jan. 26, 2016), adopted, 2016 WL 338412 (D. S.C. Jan. 28, 2016) (38,900 electronics worker jobs nationally); Bissett v. Colvin, 2015 WL 5286106, at *11 (C.D. Cal. Sept. 9, 2015) (80,000 electronics worker jobs nationally); Neal v. Colvin, 2015 WL 5098796, at *3 (W.D. Tex. Aug. 31, 2015) (311,000 electronics worker jobs nationally); Obeso v. Colvin, 2015 WL 10692651, at *14 (E.D. Cal. Apr. 20, 2015) (80,000 electronics worker jobs nationally); Keppeler v. Colvin, 2015 WL 1472094, at *5 (N.D.N.Y. Mar. 31, 2015) (140,000 electronics worker jobs nationally); Mello v. Colvin, 2014 WL 1215055, at *4 n.5 (D. Mass. Mar. 25, 2014) (239,550 electronics worker jobs nationally).

With the exception of the expert in Harris, all experts have estimated that these jobs exist in "significant numbers." See Gutierrez v. Commissioner, 740 F.3d 519, 528-29 (9th Cir. 2014) (25,000 jobs constitutes a "significant number" of jobs in the national economy).